**SO ORDERED.**

**SIGNED this 29 day of May, 2013.**



_____

**James D. Walker, Jr.**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 12-10570-JDW |
| RACHEL ILENE SULLIVAN, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| BETTYE BOZEMAN, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 12-1012 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| RACHEL ILENE SULLIVAN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Plaintiff:   Greg Alan Clark
                 Post Office Box 605
                 Albany, Georgia 31702

For Debtor:      Jeanie K. Tupper
                 1205 Dawson Road
                 Albany, Georgia 31707

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's complaint objecting to discharge.  This

is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(J).  After considering the pleadings,

the evidence, and the applicable authorities, the Court enters the following findings of fact and

conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

At a trial held on March 14, 2013, Plaintiff Bettye Bozeman and Debtor-Defendant

Rachel Sullivan stipulated to the relevant facts, as follows:[1] Debtor purchased a flower shop from

Plaintiff in June 2007. At the time of the purchase, Debtor had a high school education and no

business experience. Plaintiff financed the sale with a promissory note and security agreement.

The flower shop closed in March 2012, with a balance still due on the note. Debtor filed a

Chapter 7 petition on April 16, 2012.

On her original statement of financial affairs ("SOFA"), on line 1, Debtor listed $7,200 in

income from the flower shop business in 2010, no income from the business in 2011, and no

income from the business year-to-date in 2012. On line 20 of the SOFA, which requires debtors

who are in business to disclose information about the last two inventories of their property,

Debtor checked the box for "none." Debtor's Schedule I listed monthly income of $600 from

alimony or support and $200 in assistance from her children; it did not list any business income.

On Form B22A, the means test, Debtor left all parts of line 4 blank. Line 4(a) requires the debtor

---

[1] During the trial, Debtor's counsel offered additional facts, circumstances, and
explanations of Debtor's conduct. None of counsel's statements are a matter of evidence and,
therefore, will not be considered for purposes of this opinion except to the extent they can be
construed as legal arguments rather than assertions of fact.

to list the average monthly gross receipts from the operation of a business from the six months

prior to the month in which the petition was filed; line 4(b) requires the debtor to list average

ordinary and necessary business expenses from that time period; and line 4(c) requires the debtor

to report the net business income.

Debtor's § 341(a) meeting of creditors was held on May 24, 2012. During the meeting,

Debtor testified that she had performed inventories. However, she has not amended the SOFA to

show information about the inventories and she has never produced copies of the inventories.

Also at the meeting of creditors, Debtor testified that she used business funds to pay personal

debts. Discovery documents showed the amount paid was $5,077.22. The trustee advised Debtor

that her personal use of business funds constituted income; as a result her Schedule I, Form

B22A, and income tax returns were possibly incorrect.

According to a "Statement of Revenues and Expenses" for the year 2011, prepared by

Debtor's accountant for tax purposes, the flower shop had sales of $123,891.89 and purchases or

cost of goods sold of $46,992.93, for a gross profit of $76,898.96. The flower shop had other

expenses in the amount of $63,434.86, resulting in a net income of $13,464.10. The expenses

included an amortization expense in the amount of $6,408, which represents an amortization of

goodwill acquired with the 2007 purchase of the flower shop. A handwritten note indicates

Debtor can take a depreciation expense in the amount of $13,464.10, which will reduce her

taxable income to $0. A separate handwritten note provides, "Tax return may need to be

amended for personal credit card payment incorrectly posted to cost of goods sold." (Exhibit A.)

Debtor filed an amended SOFA on August 16, 2012, but made no change to her income from

operation of a business.

4

Plaintiff filed a complaint objecting to Debtor's discharge under 11 U.S.C. § 727(a) on the grounds that she fraudulently concealed property (§ 727(a)(2)), made false oaths (§ 727(a)(4)), and failed to keep business records (§ 727(a)(3)). In the pretrial stipulation, Plaintiff limited her case to fraudulent concealment of property and making false oaths. (Amended Stip. ¶ (E), docket no. 16.) After considering the facts and legal authorities, the Court will enter judgment for Debtor.

### Conclusions of Law

Plaintiff seeks to deny Debtor a discharge under 11 U.S.C. § 727(a)(2) and (a)(4), which provide as follows:

> (a) The court shall grant the debtor a discharge, unless–
> ...
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>> (B) property of the estate, after the date of the filing of the petition;
>> ...
>> (4) the debtor knowingly and fraudulently, in or in connection with the case–
>>> (A) made a false oath or account[.]

11 U.S.C. § 727(a)(2), (a)(4).

Because bankruptcy policy favors providing a fresh start to honest but unfortunate debtors, objections to discharge are construed liberally in favor of the debtor. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). The party opposing discharge must prove its case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.

5

Ct. 654, 661 (1991); <u>Jennings v. Maxfield</u> (<u>In re Jennings</u>), 533 F.3d 1333, 1339 (11th Cir.

2008). If it does so, the burden shifts to the debtor to '"bring forward enough credible evidence to

dissuade the court'" from denying discharge. <u>Id.</u> (quoting <u>In re Prevatt</u>, 261 B.R. 54, 58 (Bankr.

M.D. Fla. 2000)).

      **Fraudulent Transfer or Concealment of Property.** Plaintiff did not specifically

identify the property she believes Debtor fraudulently "transferred, removed, destroyed,

mutilated, or concealed." However, Plaintiff's factual presentation revolves around Debtor's

failure to disclose business income and failure to produce inventories. Assuming the business

income and inventories are the property at issue, the Court must determine whether Debtor

concealed them "with intent to hinder, delay, or defraud a creditor." The nature of the fraudulent

intent must lie in actual fraud and not constructive fraud. <u>Miller</u>, 39 F.3d. at 306. Furthermore,

fraudulent intent may be inferred from the circumstances or from Debtor's conduct. <u>Jennings</u>,

533 F.3d at 1339 (citing <u>In re Krehl</u>, 86 F.3d 737, 743 (7th Cir. 1996)).

      In this case, Debtor's Means Test showed no income from the flower shop in the six

months preceding her bankruptcy filing, and her SOFA showed no income from the flower shop

in 2011. However, the Statement of Revenues and Expenses prepared by Debtor's accountant

shows that in 2011, Debtor's flower shop made sales in the amount of $123,891.89 and incurred

cost of goods sold in the amount of $46,99.93, for gross profit of $76,898.96. The shop incurred

other expenses in the amount of $63,434.86, for net income of $13,464. However, Debtor's

COGS may include payments for Debtor's personal expenses in the amount of $5,077.22. The

regular business expenses included an amortization expense in the amount of $6,408 for the

purchase of goodwill, which does not represent an actual outlay of cash in 2011. Therefore, 2011

income based on the flower shop's actual cash flows may be as high as $24,949.22.

Furthermore, Debtor testified at her § 341(a) meeting that she conducted inventories even though

her SOFA reflected otherwise. Although Debtor amended her SOFA, the amendment did not

disclose either the 2011 business income or the dates of the inventories.

Plaintiff has shown that Debtor omitted business income from her SOFA and Means Test

and failed to disclose it by amendment.[2] Plaintiff has also shown that Debtor omitted from her

SOFA information about inventories and failed to disclose that information by amendment.[3]

These omissions, by themselves, do not prove intent to deceive. Instead, the omissions appear to

be the result of carelessness and poor legal representation[4] rather than deception. This conclusion

is supported by the Statement of Revenues and Expenses, which indicates Debtor's taxable

income for 2011 was $0. This tends to show Debtor's failure to list her business income could

have resulted from a simple misunderstanding of the type of income to be disclosed (gross

income vs. taxable income) rather than any nefarious intent. Furthermore, the failure to amend

schedules does not show fraudulent intent because the omissions were already a matter of record

---

[2] Plaintiff also pointed out that Debtor did not disclose business income on her Schedule I. However, Plaintiff acknowledged that Schedule I reflects a debtor's income going forward. Because the flower shop closed prior to the petition date, Debtor did not err by omitting business income from Schedule I.

[3] The Court notes that while Debtor omitted the dates of any inventories conducted, on Schedule A, she listed "Commercial Building, Equipment, Fixtures & Inventory" valued at $36,718. Thus, the existence of inventory was disclosed, but it was not itemized or separately valued.

[4] It is impossible to conclude that Debtor received adequate legal representation when her attorney was present at the § 341(a) meeting and therefore aware of the deficiencies in Debtor's forms. Nevertheless, her attorney failed to remedy those deficiencies when filing amended forms on Debtor's behalf.

to the extent they were revealed through testimony at the § 341(a) meeting and discovery

documents.

This is not like a case in which a debtor transfers property on the eve of bankruptcy or

conceals such property for the purpose of keeping it out of the hands of creditors. In those cases,

the debtors generally think they are protecting the property, even if it has no value. See Caldwell

v. Horton (In re Horton), 252 B.R. 245, 248 (Bankr. S.D. Ga. 2000) (Walker, J.) (debtor's failure

to list property including firearms and a horse was fraudulent because debtor deliberately made

the omissions in hopes of retaining the property). There is no evidence that Debtor had any

reason to believe that misreporting her business income and information about inventories would

benefit her in any way. The omissions simply do not fit within any plausible scheme to defraud

creditors. Because Plaintiff has failed to prove Debtor concealed her business income and

inventories with intent to hinder, delay, or defraud a creditor, the Court will rule in favor of

Debtor on Plaintiff's § 727(a)(2) claim.

**False Oath**. To prove false oath, Plaintiff must show that Debtor made a material false

oath with fraudulent intent. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). A false oath

is material for purposes of § 727(a)(4) "if it bears a relationship to the bankrupt's business

transactions or estate, or concerns the discovery of assets, business dealings, or the existence and

disposition of his property." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir.

1984). Fraudulent intent may be established by showing that the debtor deliberately omitted

information from her bankruptcy schedules. Swicegood, 924 F.2d. at 232.

Debtor signed her bankruptcy petition under the sworn declaration that all information

provided was true and correct, subject to penalties for perjury. Therefore, any omissions may be

8

fairly described as a false oath. As discussed above, Debtor omitted information from her

bankruptcy forms about her 2011 income and inventories. Although she later disclosed some

evidence of her income from the flower shop and admitted to making inventories, she never

amended her forms to fully disclose the required information. These omissions directly related to

Debtor's business dealings and therefore fit within the definition of "material" articulated in

Chalik.

However, Plaintiff also must establish that the omissions were made with fraudulent

intent. The Court has already concluded that the omissions and subsequent failure to amend the

schedules were the result of carelessness, misunderstandings, and poor legal representation and

were not deliberate or the result of an intent to deceive. "An honest mistake or oversight is not

sufficient to deny a debtor his discharge. Even a false statement resulting from ignorance or

carelessness does not rise to the level of 'knowing and fraudulent' sufficient to deny a

discharge." Melarango v. Ciotti (In re Ciotti), 448 B.R. 694, 704 (Bankr. W.D. Pa. 2011)

(citations omitted); Bauman v. Post (In re Post), 347 B.R. 104, 112 (Bankr. M.D. Fla. 2006).

Because Plaintiff has failed to prove Debtor made a false oath with fraudulent intent, the Court

will rule in favor of Debtor on Plaintiff's § 727(a)(4) claim.

**Failure to Keep Records.** Plaintiff asserted in the pretrial stipulation that she was relying

on § 727(a)(2) and § 727(a)(4), thus apparently abandoning her claim for failure to keep records

under § 727(a)(3). See Wells v. Willow Lake Estates, Inc., 390 Fed. Appx. 956, 960 (11th Cir.

2010) (issues not argued or mentioned only in passing may be deemed abandoned). Furthermore,

during the trial, Plaintiff's counsel stated his client was seeking denial of the discharge based on

the fact that Debtor failed to disclose business income, knew of the problems related to

calculating her income, and failed to amend her forms. However, also during the trial, Plaintiff's

counsel stated he was told he would be given the inventories and was later told they did not exist,

and he argued it would be revealing to see what the inventories were at the beginning of 2012

compared to what they were when the business closed in March 2012. Assuming Plaintiff did not

intend to abandon her § 727(a)(3) claim, she has failed to make a case for failure to keep records.

> Under § 727(a)(3), the Court may deny a discharge if

>> the debtor has concealed, destroyed, mutilated, falsified, or failed
>> to keep or preserve any recorded information, including books,
>> documents, records, and papers, from which the debtor's financial
>> condition or business transactions might be ascertained, unless
>> such act or failure to act was justified under all the circumstances
>> of the case[.]

11 U.S.C. § 727(a)(3). To prove a case for failure to keep records, Plaintiff must show that

Debtor "failed to maintain and preserve adequate records and that the failure made it *impossible*

to ascertain [Debtor's] financial condition and *material business* transactions." Gullickson v.

Brown (In re Brown), 108 F.3d 1290, 1295 (10th Cir. 1997) (citing In re Folger, 149 B.R. 183,

188 (D. Kan. 1992)) (emphasis added by 10th Circuit; see also Butler v. Liu (In re Liu), 288

B.R. 155, 161 (Bankr. N.D. Ga. 2002). Plaintiff has shown that Debtor admitted to making

inventories and that she failed to produce them. However, Plaintiff has offered no evidence to

indicate that the failure to produce the inventories makes it impossible to determine Debtor's

financial condition or her material business transactions, especially in light of the fact that

Plaintiff has received other financial documents, including the 2011 Statement of Revenues and

Expenses. Debtor merely argues that the inventories would be "revealing," which is not sufficient

to deny a discharge under § 727(a)(3).

**Conclusion**

Plaintiff seeks to deny Debtor a discharge under § 727(a)(2) and (a)(4). Both sections require Plaintiff to prove Debtor acted with fraudulent intent, either in concealing assets or in making a false oath. The Court finds Debtor acted with carelessness and received inadequate legal counsel rather than acting with fraudulent intent. Furthermore, assuming Plaintiff adequately preserved her claim under § 727(a)(3), the Court finds Debtor's failure to keep inventory records did not render it impossible to determine Debtor's financial condition and material business transactions. For the forgoing reasons, the Court will enter judgment for Debtor.

An Order in accordance with this Opinion will be entered on this date.


END OF DOCUMENT